UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MORNINGSTAR HEALTHCARE, LLC,

    Plaintiff,

v.

                                CASE NO.: 8:05-cv-949-EAK-MAP

GREYSTONE & CO., INC.,

    Defendant.
_____/

### DEFENDANT'S MOTION FOR PROCEEDINGS SUPPLEMENTARY TO IMPLEAD MARSHALL B. COFFMAN

Defendant Greystone & Co., Inc., ("Greystone"), by and through its undersigned counsel, and pursuant to Rule 69 of the Federal Rules of Civil Procedure and Section 56.29, Florida Statutes, hereby moves this Court to institute proceedings supplementary, to implead Marshall B. Coffman, and to subject him to the judgment against Plaintiff, Morningstar Healthcare LLC ("Morningstar"). Greystone submits the affidavit of its co-Chief Operating Officer, Robert Barolak, and the following Memorandum of Law in support of this Motion.

### MEMORANDUM OF LAW

#### Procedural History

1.    Morningstar is an Arkansas limited liability company with two "members", namely Marshall "Skip" Coffman ("Coffman") and Samuel Bailey ("Bailey"). Morningstar filed its Complaint herein in May of 2005, alleging that Greystone breached a loan commitment to Morningstar in May of 2000.

2.    After several months of intensive discovery, Greystone filed its Motion for Summary Judgment on January 30, 2007. (Dkt. # 50).

3.      On August 27, 2007, the Court granted Greystone's Motion for Summary Judgment and directed the Clerk to enter judgment in Greystone's favor. (Dkt. # 84). The Clerk entered judgment in Greystone's favor on August 28, 2007. (Dkt. #85).

4.      On September 7, 2007 Greystone filed its Motion to Tax Fees and Costs against Morningstar. (Dkt. # 86).

5.      On September 11, 2007, the Clerk entered Greystone's Bill of Costs which taxed against Morningstar costs in the amount of $15,786.24. (Dkt. # 93).

6.      On October 23, 2007, this Court entered an Order granting in part Greystone's Motion for Attorney's Fees and directing Morningstar to pay Greystone the amount of $455,917.00 for attorneys' fees (Dkt. # 109).

7.      Greystone sought to collect its judgment through a Writ of Execution (Dkt. #112), which was served upon Morningstar by the United States Marshal in Little Rock, Arkansas. (Dkt. #118). As demonstrated in the Marshal's return of service form and the attached affidavit of Robert Barolak (Ex. A), the entire amount of the judgment remains unsatisfied because Morningstar has no assets.

## Law and Argument

8.      Rule 69 of the Federal Rules of Civil Procedure provides that the procedure on execution in proceedings supplementary to and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is located existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable.

9.      In Florida, proceedings supplementary are governed by Florida Statute Section 56.29. The jurisdictional prerequisites for instituting post-judgment supplementary proceedings

are a returned and unsatisfied writ of execution and an affidavit averring that the writ is valid and unsatisfied, along with a list of persons to be impleaded. Wieczoreck v. HH Builders, Inc., 450 So.2d 867 (Fla. 5th DCA 1984); Allied Industries International, Inc. v. Rubin 668 F. Supp. 1516 (S.D. Fla. 1988).

10. In supplementary post-judgment proceedings, the impleading of parties whose interest may be affected by the court's rulings is necessary both to acquire jurisdiction over them and to afford them procedural due process. The impleading of third parties whose interests may be affected by the court's rulings in a supplementary post-judgment proceeding does not in and of itself imply liability on part of the impleaded third parties, but provides them with an opportunity to raise their defenses and protect their interests consistent with genuine due process. Id. at 871-872.

11. Greystone seeks to pierce the corporate veil and implead Morningstar's managing member, Marshall "Skip" Coffman, and subject him to the judgment against Morningstar. As demonstrated below and as supported by Coffman's deposition testimony[1], Morningstar was nothing more than a shell limited liability company formed by Coffman. It was run by the same personnel, at the same facility, and using the same letterhead as Coffman's other companies. (Coffman Dep., pp. 26-30).

12. The general rule in Florida is that the corporate veil will not be pierced, either at law or in equity, unless it be shown that the corporation was organized or used to mislead creditors or to perpetrate a fraud upon them. . . Dania Jai-Alai Palace, Inc. v. Sykes, 450 So. 2d 1114, 1120 (Fla. 1984). In making this determination, a court must examine the relationship of

---

[1] Coffman's deposition transcript (Dkt. # 55) was previously filed in support of Greystone's Motion for Summary Judgment.

the entities and individuals involved. Among the factors relevant to this inquiry are: 1) common ownership and control; 2) performance of one entity's contracts by another; 3) lack of capitalization; 4) commingling of funds; and 5) ability or inability to fulfill contractual obligations. See Ocala Breeders v. Hialeah, Inc. 735 So.2d 542, 543 (Fla. 5th DCA 1999) (holding impleaded parent corporation liable for the judgment against its subsidiary).

13.   Greystone believes sufficient facts exist to demonstrate that Coffman used Morningstar as a mere instrumentality in his dealings with Greystone. Coffman is a real estate investor and the president of Coffman Investment Company. As previously recognized by this Court, Coffman contacted Greystone to request a loan and provided Greystone with documents in that regard. (Dkt. #86, p.3). Coffman owned Coffman Investment Company and regularly used its letterhead in correspondence to Greystone and third-parties in the transaction.[2]

14.   Coffman communicated with Greystone for several weeks before he and Mr. Bailey formed Morningstar. (Ex. 9, Exhibit B hereto). For instance, in March of 2000, Coffman made verbal representations to Greystone concerning the validity of potential receivables and promised to provide Greystone with a "source and use" as soon as possible. (Ex. 5, Exhibit B hereto). On April 14, 2000, Coffman sent Greystone additional information about Dr. Bonati and the Hospital and requested a loan from Greystone. (Coffman Dep. 89:17-90:11; Ex. 7). Again on April 20, 2000, Coffman asked Greystone to send him documentation indicating Greystone's interest in financing the purchase of the Hospital. (Coffman Dep. 96, 103:24-104:25; Ex. 69). Coffman engaged in all of these acts before Morningstar even existed.

---

[2] Said correspondence, and other relevant global exhibits previously marked and numbered by the parties, are attached hereto as composite Exhibit B.

Notably, Coffman's statements to Greystone on issues such as pledges of receivables, licensing, and other key issues in the proposed loan pre-date Coffman's formation of Morningstar.

15. Mr. Coffman and his business partner, Sam Bailey, formed Morningstar as an Arkansas limited liability company on April 21, 2000. (Ex. 9, Ex. B hereto). Prior to forming Morningstar, Coffman communicated with Greystone and Dr. Bonati either individually or through his other company, Coffman Investment Company (Exs. 4, 5, 7, 8, 69, 140, Ex. B hereto).

16. Coffman admitted in his deposition that Morningstar was a start up corporation with no operations, no office, no employees, no telephone, and limited financial resources. (Coffman Dep. 26:7-25, 28:17-19, 29:1-2 and 29:21-24). Coffman operated Morningstar out of the offices of Coffman Investment Company in Little Rock, Arkansas, utilizing its employees, facsimile and telephone numbers because Morningstar had none. (Id.).

17. Morningstar has not conducted any business since it was formed by Coffman in April of 2000. (Coffman Dep. 29:17-24). It appears that Coffman has maintained Morningstar as an "active" limited liability company for the sole purpose of bringing a lawsuit against Greystone. Coffman made the decision to sue Greystone unilaterally, and did not speak with Morningstar's other member, Mr. Bailey, before filing the lawsuit. (Coffman Dep. 18:16-21). Coffman acknowledged that he was solely funding the lawsuit on behalf of Morningstar and understood that he would receive all the rewards of winning the lawsuit. (Coffman Dep. 18:22 - 19:21).

18. At the time of the proposed deal with Greystone, Coffman was defending a sizeable judgment collection action against him personally. (Coffman Dep. 21:2 - 23:3).

Coffman's financial difficulties were never disclosed to Greystone and were not discovered by Greystone until discovery was conducted in this case.

19.     Morningstar's bank records demonstrate that Coffman established a bank account for Morningstar on April 25, 2000. (Exhibit C hereto). Morningstar's account was minimally capitalized by Mr. Coffman and the little funds that Morningstar did have in its account were withdrawn by Mr. Coffman in May of 2000.

20.     Based on the foregoing, Greystone submits that sufficient facts exist to support the institution of proceedings supplementary and the filing of a Complaint against Coffman as an impleader defendant. Greystone respectfully seeks an Order permitting Greystone to file said Complaint within twenty days of the date of said Order.

### RULE 3.01 CERTIFICATION

Prior to filing the instant Motion, the undersigned counsel for Defendant conferred with counsel for Plaintiff in a good faith effort to resolve the issues addressed herein in accordance with Local Rule 3.01(g). Counsel were unable to resolve the issues presented in this Motion.

/s/ John D. Emmanuel
John D. Emmanuel, Esquire
Florida Bar No: 0475572
Andrew B. Demers, Esquire
Florida Bar No. 0015189
FOWLER WHITE BOGGS BANKER P.A.
P.O. Box 1438
Tampa, FL  33601
(813) 228-7411
Fax No: (813) 229-8313
Attorneys for Defendant

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that a true and accurate copy of the foregoing Defendant's Motion for Proceedings Supplementary and Impleader, with referenced affidavit and exhibits, has been furnished by CM/ECF and/or U.S. Mail on February 4, 2008 to:

Mark S. Howard  
Mark S. Howard, P.A.  
One Urban Centre  
4830 West Kennedy Blvd  
Suite 300  
Tampa, Florida 33609  
mhoward@mshlegal.com

                              /s/  John D. Emmanuel

22692076